IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| EBRAHIMI DARVOSH, # M-34108, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 18-cv-1350-MJR |
| ) | |
| JOHN BALDWIN, ) | |
| JACQUELINE LASHBROOK, ) | |
| ILLINOIS DEPT. of CORRECTIONS, ) | |
| DOCTOR SIDDIQUI, ) | |
| ANGELA CRAIN, ) | |
| and WEXFORD HEALTH CARE ) | |
| SOURCES, ) | |
| ) | |
| Defendants. ) | |

# MEMORANDUM AND ORDER

**REAGAN, Chief District Judge:**

Plaintiff Ebrahimi Darvosh,[1] who is serving a life sentence at Menard Correctional Center ("Menard"), has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff claims that Defendants have been deliberately indifferent to his serious medical conditions, and have denied him accommodations that he should receive pursuant to the Americans with Disabilities Act ("ADA") and the Rehabilitation Act ("RA"). This case is now before the Court for a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A.

Under § 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). The Court must dismiss any portion of the Complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief.

---

[1] While Plaintiff uses this spelling of his name in the case caption, he also lists his name as "Daroush Ebrahimi" in some of his attached letters and grievances. (Doc. 1, pp. 14-15, 23, 27-28).

1

28 U.S.C. § 1915A(b).

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that "no reasonable person could suppose to have any merit." *Lee v. Clinton*, 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*. At the same time, however, the factual allegations of a *pro se* complaint are to be liberally construed. *See Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011); *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Applying these standards, the Court finds that some of Plaintiff's claims survive threshold review under § 1915A.

## The Complaint

Before coming to Menard, Plaintiff was incarcerated at the Cook County Department of Corrections, where he was issued a cane and orthopedic footwear, as well as a lower bunk permit

and extra mattress. (Doc. 1, p. 2). He has heart problems, chronic pain, and impaired balance and mobility. *Id.* At Stateville Correctional Center, Plaintiff's permits were continued, and he was issued a crutch.

When Plaintiff arrived at Menard, he was issued a permit to accommodate his medical/mobility needs, but was not allowed to have an assistive walking device. (Doc. 1, pp. 3, 12). After about 6 months, he was "stripped" of his previously-issued permits, which were replaced by a permit confining him to be fed in his cell. (Doc. 1, pp. 3, 13). Plaintiff asserts that this action was taken in retaliation for a grievance he filed 2 months after his arrival at Menard. (Doc. 1, pp. 3, 29[2]-30).

Plaintiff requested to have his cane or crutches returned, but Angela Crain (Menard ADA Coordinator) has refused this accommodation. (Doc. 1, pp. 3, 14-15). However, one of Plaintiff's attached documents (a permit dated June 18, 2018) indicates that he was recently given permission to have a crutch in his cell. (Doc. 1, p. 16).

Plaintiff sought help from Dr. Siddiqui (Menard Medical Director), who sent him to an outside specialist at Prairie Cardiovascular. This doctor "confirmed" that Plaintiff needs mobility accommodations and that he "has serious medical and heart problems." (Doc. 1, p. 3). Plaintiff attaches the specialist's preliminary report, dated May 18, 2018, which notes that Plaintiff has ongoing angina, and recommends he start taking Imdur. (Doc. 1, p. 17). Further, he "absolutely needs to continue aspirin and Plavix uninterrupted until September 2018 . . . . He has high risk factors for reocclusion of stents." (Doc. 1, p. 18). Due to Plaintiff's age (66) and "recurrent heart disease," the specialist recommends switching to a "high intensity statin" or increasing Plaintiff's dosage of Zocor. *Id.* He notes that Plaintiff needs 30 minutes of exercise per day, and requests he be given a cane for support since he has difficulty walking. *Id.*

---

[2] The grievance Plaintiff references was dated December 9, 2016. (Doc. 1, p. 29).

Plaintiff asserts that Dr. Siddiqui denied and delayed his access to proper medical care, and that Wexford Health Care Sources ("Wexford") "recommended other alternative care." (Doc. 1, p. 3). Long before Plaintiff's 2018 visit to Prairie Cardiovascular, he wrote a grievance (dated February 28, 2017) asking to see a heart specialist and to be put back on clopidogrel[3] (Plavix), because when he was taken off that medication, his chest pain increased and was "severe at times." (Doc. 1, p. 23). The counselor's response to this grievance states that the matter was previously addressed in grievances dated in May and December 2016. *Id.*; (Doc. 1, pp. 29-32). Plaintiff also references a March 23, 2017, medical referral, which indicates that a cardiology consultation was considered, but denied by Dr. Ritz of Wexford. Dr. Ritz recommended alternative care, consisting of an EKG and chest x-ray. (Doc. 1, p. 26).

On April 9, 2018, Plaintiff wrote a letter ("Exhibit P") to Medical Director Siddiqui stating that the outside specialist (Dr. Vinch) had recommended Plavix to prevent his heart condition from deteriorating, but this recommendation had been ignored. (Doc. 1, pp. 4, 27). Plaintiff added that his pain is unbearable, and he "constantly pass[es] out," which sometimes causes injury. (Doc. 1, p. 28). Dr. Siddiqui, however, has refused to listen to the specialist, and Wexford refuses to fill the recommended prescription even though Plaintiff's other medications are not working. (Doc. 1, p. 4).

On May 26, 2018, Crain had Plaintiff's crutch confiscated and destroyed. (Doc. 1, pp. 4, 15, 19). Plaintiff had told Crain that he had problems with his shoulder and elbow when using the crutch, and he requested a cane. (Doc. 1, pp. 4, 15). However, Crain and Siddiqui refuse to issue Plaintiff a cane, leaving him susceptible to falls because he has no means to support himself. Plaintiff notes that other handicapped individuals at Menard have canes which allow

---

[3] Clopidogrel is the generic name for Plavix. Prescribers' Digital Reference, http://www.pdr.net/drug-summary/Plavix-clopidogrel-bisulfate-525#3 (last visited July 25, 2018).

them to access all areas of the prison. (Doc. 1, p. 4).

Without a cane or other assistive device, Plaintiff is unable to access the cafeteria or any areas of the prison requiring long walks on unsteady surfaces. He also is in danger of falls and injury in the shower or other non-handicapped-accessible areas of the prison. (Doc. 1, p. 4). Plaintiff asserts that Baldwin (IDOC Director) and Lashbrook (Menard Warden) are in violation of the ADA for failing to either modify the physical barriers in the prison or provide him with mobility assistance. *Id.* Further, Plaintiff has no access to rehabilitation or cardiovascular machines or assistance to maintain physical fitness.

Plaintiff requests declaratory relief, a preliminary and permanent injunction ordering Defendants to provide him with an assistive walking device and medications for his heart condition, and a transfer to a facility that can provide for those needs. (Doc. 1, p. 5). He also seeks compensatory and punitive damages. *Id.*

Along with the Complaint, Plaintiff filed a "Memorandum of Law in Support of Preliminary Injunction." (Doc. 1-1). However, Plaintiff has not filed a separate motion for a preliminary injunction.

## **Merits Review Pursuant to 28 U.S.C. § 1915A**

Based on the allegations of the Complaint, the Court finds it convenient to divide the *pro se* action into the following counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit. Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice.

> **Count 1:** Eighth Amendment deliberate indifference claim against Dr. Siddiqui and Crain, for refusing to provide Plaintiff with a cane or other assistive walking

device;

**Count 2:** Claim against Baldwin, Lashbrook, and the Illinois Department of Corrections under the Americans with Disabilities Act and Rehabilitation Act, for failing to provide Plaintiff with a cane or other assistive walking device, or to otherwise provide him with access to the prison's cafeteria, exercise/recreational areas, and other areas accessible to non-impaired prisoners;

**Count 3:** Eighth Amendment deliberate indifference claim against Dr. Siddiqui for discontinuing medication that relieved Plaintiff's chest pain, failing to provide him with effective treatment for his pain, delaying Plaintiff's referral to a cardiovascular specialist, and failure to provide Plaintiff with medications recommended by the specialist;

**Count 4:** Eighth Amendment deliberate indifference claim against Wexford Health Care Services for failing to approve Plaintiff's referral to a cardiovascular specialist, and failing to approve his prescription medications recommended by the specialist;

**Count 5:** Retaliation claim based on the termination of Plaintiff's medical permits, and the replacement of those permits with an order/permit for Plaintiff to be fed in his cell, after he filed a grievance in December 2016.

Counts 1-4 shall proceed for further review; however, the Illinois Department of Corrections shall be dismissed as a Defendant. Count 5 shall be dismissed without prejudice for failure to state a claim upon which relief may be granted.

## Count 1 – Deliberate Indifference – Mobility

According to Plaintiff, Crain and Siddiqui failed to provide him with a cane or crutch to assist him with walking, for a significant part of his time at Menard. Due to his physical impairments and balance problems, Plaintiff is prone to falls if he does not have some device to assist him with walking, even when he is confined to his cell. The Seventh Circuit has recognized that an inmate's inability to engage in exercise may become a constitutional violation if the lack of movement means that he is unable to maintain his health. *See Turley v. Rednour*, 729 F.3d 645, 652-53 (7th Cir. 2013); *Harris v. Fleming*, 839 F.2d 1232, 1236 (7th Cir. 1988). Moreover, in Plaintiff's case, the heart specialist he consulted in April 2018 recommended that

Plaintiff needed to engage in exercise for 30 minutes per day, because of his medical condition, and asked prison officials to provide Plaintiff with a cane. Plaintiff may have recently received a crutch, but even if he did, his factual allegations support a claim that he has been without such assistance for an extended period.

At this stage, Plaintiff has stated a deliberate indifference claim against Siddiqui and Crain for denying him a cane or crutch, that survives review under § 1915A. Accordingly, **Count 1** shall proceed for further consideration.

### Count 2 – Americans with Disabilities Act/Rehabilitation Act

"In order to make out a prima facie case of discrimination under both the ADA and the Rehabilitation Act, a plaintiff must show: (1) that he suffers from a disability as defined in the statutes, (2) that he is qualified to participate in the program in question, and (3) that he was either excluded from participating in or denied the benefit of that program based on his disability." *Novak v. Bd. of Trustees of S. Ill. Univ.*, 777 F.3d 966, 974 (7th Cir. 2015) (citing *Jackson v. City of Chicago*, 414 F.3d 806, 810 (7th Cir. 2005)). Here, Plaintiff has sufficiently alleged that his mobility impairment and balance problems amount to a disability within the meaning of the ADA and RA. Further, he has not been consistently provided with any assistive device to allow him to safely mobilize around the prison. He thus faces obstacles to safely access the cafeteria, shower, and other areas that are open to non-disabled prisoners, and he alleges that many locations are not handicap-accessible.

Based on these factual allegations, Plaintiff's ADA and RA claims for damages and/or injunctive relief may proceed in this action. *See U.S. v. Georgia*, 546 U.S. 151 (2006) (inmate may seek damages under Title II of ADA if defendant's conduct also violates the Eighth Amendment); *Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206 (1998) (Title II of the ADA applies

to prisons); *Norfleet v. Walker*, 684 F.3d 688, 690 (7th Cir. 2012); *Jaros v. Illinois Dept. of Corrections*, 684 F.3d 667 (7th Cir. 2012) (state prisoner may have a Rehabilitation Act claim even if he does not have a viable ADA claim).

Notably, only the state agency, or an official in his/her official capacity, may be sued under the ADA or RA. *Jaros*, 684 F.3d at 670. Accordingly, the claims in **Count 2** shall proceed against IDOC Director Baldwin in his official capacity. The Illinois Department of Corrections shall be dismissed as a party, as its inclusion would be duplicative. Warden Lashbrook shall remain in the action, in her official capacity only, in order to implement any injunctive relief to which Plaintiff may be entitled in connection with any of the claims in this action. *See Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011) (proper defendant in a claim for injunctive relief is the government official responsible for ensuring any injunctive relief is carried out).

### Count 3 – Deliberate Indifference – Heart Disease & Pain

Plaintiff alleges that he has a serious heart condition, including surgically implanted stents, and suffers from angina pain which is so severe that he blacks out on some occasions. These facts demonstrate that Plaintiff has a serious medical condition that significantly affects his daily activities, and involves substantial, recurring pain. The Complaint thus satisfies the objective component of an Eighth Amendment claim. *See Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997).

The other, subjective, component of a deliberate indifference claim requires a showing that the defendant prison official knew of a substantial risk of harm to an inmate and either acted or failed to act in disregard of that risk. "Delaying treatment may constitute deliberate indifference if such delay exacerbated the injury or unnecessarily prolonged an inmate's pain."

*Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012). *See also Farmer v. Brennan*, 511 U.S. 825, 842 (1994).

Plaintiff claims that he requested Dr. Siddiqui to put him back on Plavix/clopidogrel after it was discontinued some time in 2016, because his pain significantly increased after he was taken off that medication. While the Eighth Amendment does not entitle Plaintiff to demand specific treatment, *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997), a doctor's persistence in a course of treatment that is ineffective may rise to the level of a constitutional violation. *See Greeno v. Daley*, 414 F.3d 645, 655 (7th Cir. 2005) (doctor continued ineffective treatment, and refused to order endoscopy or specialist referral over a two-year period during which plaintiff suffered from ulcer). Further, Plaintiff alleges that he requested a referral to a cardiovascular specialist for at least a year before he ultimately was scheduled to see one, and he attributes at least some of that delay to Dr. Siddiqui. And finally, after Plaintiff did see the specialist in 2018, Dr. Siddiqui allegedly has not followed the specialist's recommendations regarding necessary medication for Plaintiff.

Plaintiff may proceed with his deliberate indifference claim against Dr. Siddiqui in **Count 3** with reference to these factual allegations.

### Count 4 – Deliberate Indifference - Wexford

Defendant Wexford is a corporation that employs Dr. Siddiqui and provides medical care at the prison, but it cannot be held liable solely on that basis. A corporation can be held liable for deliberate indifference only if it had a policy or practice that caused the alleged violation of a constitutional right. *Woodward v. Corr. Med. Serv. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004). *See also Jackson v. Ill. Medi-Car, Inc.*, 300 F.3d 760, 766 n.6 (7th Cir. 2002) (private corporation is treated as though it were a municipal entity in a § 1983 action).

In this case, Plaintiff has alleged that a Wexford agent denied a request for Plaintiff to be referred to a cardiovascular specialist in 2017; this appears to have delayed his eventual consultation with the specialist for about a year. Further, Plaintiff alleges that Wexford will not allow Dr. Siddiqui to prescribe some of the medications recommended for him by the specialist. These facts suggest that Wexford's official policies or practices either prevented Dr. Siddiqui from providing Plaintiff with medical care or a specialist referral, or directly caused the denial of a referral and/or treatment. Therefore, Plaintiff's claim against Wexford in **Count 4** shall also proceed for further review.

### Dismissal of Count 5 - Retaliation

Plaintiff alleges that he filed a grievance over his medical needs approximately 2 months after coming to Menard (he references the December 9, 2016, grievance at Doc. 1, p. 29). Some time later, he was "stripped" of his previously-issued permits for low bunk, low gallery, extra mattress, and a crutch or cane, and those permits were replaced with the one "confining him to his cell as a feed-in-cell." (Doc. 1, p. 3). Plaintiff alleges that these actions were taken in retaliation for the grievance.

Prison officials may not retaliate against inmates for filing grievances, lawsuits, or otherwise complaining about their conditions of confinement. *See, e.g.*, *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012); *Walker v. Thompson*, 288 F.3d 1005 (7th Cir. 2002); *DeWalt v. Carter*, 224 F.3d 607 (7th Cir. 2000). An adverse action that was motivated, at least in part, by a desire to retaliate against the inmate for engaging in the protected activity of filing a grievance or complaint may violate the First Amendment. *See McKinley v. Schoenbeck*, __ F. App'x __, No. 17-1709, 2018 WL 1830942 at *3 (7th Cir. Apr. 17, 2018) (quoting *Surita v. Hyde*, 665 F.3d 860, 878-79 (7th Cir. 2011)); *Bridges v. Gilbert*, 557 F.3d 541, 551 (7th Cir. 2009). "A

complaint states a claim for retaliation when it sets forth 'a chronology of events from which retaliation may plausibly be inferred.'" *Zimmerman v. Tribble*, 226 F.3d 568, 573 (7th Cir. 2000) (citation omitted).

The sequence of events Plaintiff describes may support a retaliation claim. However, his Complaint fails to identify the individual who took the allegedly retaliatory action of cancelling his prior permits and replacing them with the feed-in-cell order. In order for this claim to proceed, Plaintiff must identify the responsible person. Plaintiffs are required to associate specific defendants with specific claims, so that defendants are put on notice of the claims brought against them and so they can properly answer the complaint. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); FED. R. CIV. P. 8(a)(2).

At this time, the First Amendment retaliation claim in **Count 5** shall be dismissed without prejudice for failure to state a claim upon which relief may be granted.

### Pending Motion

Plaintiff's motion for recruitment of counsel (Doc. 3) shall be referred to the United States Magistrate Judge for further consideration.

The Clerk shall be directed to docket a motion for preliminary injunction, pursuant to Plaintiff's request for relief in Doc. 1 and memorandum at Doc. 1-1. This motion shall also be referred to the United States Magistrate Judge.

### Disposition

**COUNT 5** is **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted.

Any claims against **BALDWIN** and **LASHBROOK** in their individual capacities are **DISMISSED** without prejudice. These Defendants shall continue in the action in their official

capacities only.

Defendant **ILLINOIS DEPARTMENT of CORRECTIONS** is **DISMISSED** from this action without prejudice.

The Clerk is **DIRECTED** to docket a motion for preliminary injunction, with reference to the request for specific injunctive relief in the Complaint (Doc. 1, p. 5) and the memorandum of law in support of a preliminary injunction. (Doc. 1-1).

The Clerk of Court shall prepare for Defendants **BALDWIN (Official Capacity Only), LASHBROOK (Official Capacity Only), SIDDIQUI, CRAIN,** and **WEXFORD HEALTH CARE SOURCES**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the

Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to **United States Magistrate Judge Stephen C. Williams** for further pre-trial proceedings, which shall include a determination on the pending motion for recruitment of counsel (Doc. 3), and the motion for preliminary injunction that shall be docketed.

Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Williams for disposition, pursuant to Local Rule 72.2(b)(3) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: July 30, 2018**

                                                        s/ MICHAEL J. REAGAN
                                                        Chief Judge
                                                       United States District Court